IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------

| | | |
|---|---|---|
| SASS, MOORE & ASSOCIATES, INC. and SASS-MOORE SERVICE CORPORATION, | : : : : | COMPLAINT FOR BREACH OF CONTRACT |
| Plaintiffs, | : : | Case No.: |
| v. | : : | JURY TRIAL DEMANDED |
| LIMBACH COMPANY LLC, | : : | |
| Defendant. | : | |

------------------------------------------------------

Plaintiffs, Sass, Moore & Associates, Inc. and Sass-Moore Service Corporation (collectively, "Plaintiffs"), by and through their undersigned counsel, John M. Hanamirian, Esquire of Hanamirian Law Firm, P.C., hereby bring this action against Defendant Limbach Company LLC for claims of (1) breach of implied contract; (2) breach of covenant of good faith and fair dealing; (3) unjust enrichment; (4) account stated; (5) attorney's fees and costs, and for such further relief as the Court may deem just

## JURISDICTION & VENUE

1. Jurisdiction is based on 28 U.S. Code § 1332 as there is diversity of citizenship between the parties and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

2. Venue is proper under 28 U.S. Code § 1391(b) as this is the judicial district in which a substantial part of the events that gave rise to the claims occurred.

## PARTIES

3. Plaintiff Sass, Moore & Associates, Inc. ("SMA") is a Pennsylvania for-profit corporation with its registered office located at: 427 Bartlett Avenue, Ridley Park, Pennsylvania,

19078. Plaintiff SMA is also registered to do business in the State of New Jersey with its principal place of business located at: 906 N. Evergreen Avenue, Woodbury, New Jersey 08096.

4. Plaintiff Sass-Moore Service Corporation ("SMSC") is a New Jersey for-profit corporation with its registered office and principal place of business located at: 906 N. Evergreen Avenue, Woodbury, New Jersey 08096.

5. Defendant Limbach Company LLC ("Limbach") is a Delaware for-profit limited liability company with its registered office located at: 251 Little Falls Drive, Wilmington, Delaware 19808.

## FACTS COMMON TO ALL COUNTS

6. SMA is a heating, ventilation, and air conditioning ("HVAC") manufacturer's representative company that has been servicing Pennsylvania and New Jersey for nearly fifty (50) years.

7. SMSC offers HVAC service(s) covering diagnostics, repairs, maintenance, replacements, and start-ups with factory trained technicians, warranty coverage, and certified parts.

8. Limbach is a construction company that offers HVAC services and plumbing.

9. Plaintiffs and Limbach have successfully worked together on several projects in the past.

10. The projects between Plaintiffs and Limbach typically began by: (a) Plaintiffs sending Limbach a proposal; (b) Limbach sending a Purchase Order for equipment and controls based on Plaintiffs' proposal; (c) Plaintiffs providing equipment and services to Limbach and then invoicing Limbach for those equipment and services; and (d) finally, Limbach pays Plaintiffs for that equipment and their services.

11. On or around March of 2020, Limbach approached Plaintiffs with another opportunity to work together on a project.

2

12. Plaintiffs and Limbach agreed to work together in connection with a project(s) referenced as "Witherspoon" ("Witherspoon Agreement").

13. Ramping up to begin work under the Witherspoon Agreement, as done in the past, Plaintiffs sent Limbach their proposals for the project and Limbach sent Plaintiffs Purchase Orders for equipment and services.

14. Plaintiffs provided various equipment and services to Limbach associated with the Witherspoon Agreement. Specifically, SMA and SMSC provided equipment and services amounting to One Hundred Ninety Thousand Eight Hundred Eight Five Dollars and Eighteen Cents ($190,885.18) ("Outstanding Balance"):

A. <u>Sass, Moore & Associates</u>:
  i. 1-003722 Witherspoon;
  ii. 1-003722 Witherspoon:1-003722 Witherspoon DDC Controls;
  iii. 1-004695 8 Ton Vertical;
  iv. 1-004779 Science Center TCH030;
  v. 1-004794 Liberty View;
  vi. 1-004866 TCH012;
  vii. 1-004910 3-ton replacement 1-18-2021;
  viii. 1-004950 AMH;
  ix. 1-004974 Bayada;
  x. 1-004996 3 Ton Replacements;
  xi. 1-004997 AMH HP 2-15; and
  xii. 1-005007 1429 Walnut St:

  Total:  $189,437.10

(Exhibit "A").

B. <u>Sass-Moore Service Corporation</u>:
  i. 20200731 PartsSale;
  ii. 20200911 Parts Sale;
  iii. 20201103 Parts Sale; and
  iv. 2020208- Parts Sales:

  Total:  $1,448.08.00

(Exhibit "A").

15. Plaintiffs sent Limbach Invoices for the foregoing work that was completed.

16. However, Limbach failed to make the foregoing agreed upon payments to Plaintiffs.

17. Limbach claimed that one of the Fan Coil units ("the Unit" or "Units") sold to them consisted of a third-party manufacturing defect, resulting in Limbach's assertion that they are entitled to breach the Witherspoon Agreement and refused to pay SMA for the Unit.

18. To acknowledge that Limbach made an alleged claim concerning the third-party manufacturing defect, Limbach sent SMA a "back charge" in the amount of One Hundred Twenty-Six Thousand Six Hundred and Sixty-Eight Dollars ($126,668.00), which is discussed in further detail below.

19. Any alleged defect was not the fault of SMA or SMSC, and Plaintiffs communicated to Limbach that it was not conceding that back charge.

20. Limbach used the excuse surrounding the Unit to withhold remitting payments to SMA and SMSC in connection with the other fourteen (14) projects under the Witherspoon Agreement.

21. Plaintiffs contacted Limbach and their accounting department multiple times for a status update regarding the outstanding balance owed to Plaintiffs associated with all the work that was completed by Plaintiffs for the Witherspoon Agreement.

22. On or around March 11, 2021, a representative for Limbach contacted SMA and SMSC with an "account update" claiming that they did not owe Plaintiffs anything and including two (2) documents that were represented to be invoices sent from SMA ("Fake Invoices") (Exhibit "B"). Those Fake Invoices purported to create a credit balance in Limbach's system that "justified" their failure to satisfy their contractual obligations to Plaintiffs.

23. Those Fake Invoices reflected a "back charge" in the amount of One Hundred Twenty-Six Thousand Six Hundred and Sixty-Eight Dollars ($126,668.00) ("Back Charge").

4

24. The Fake Invoices were not generated or sent by SMA. There were a series of errors on the Fake Invoices including, that the Fake Invoice numbers did not coordinate with any of SMA's or SMSC's Invoice numbers. (Exhibit "A").

25. Shortly following receipt of Limbach's March 11, 2021 "account update" with the Fake Invoices, counsel for SMA and SMSC sent Limbach a Demand Letter on June 14, 2022, for payment of the Outstanding Balance that was owed to SMA and SMSC. (Exhibit "C").

26. Limbach's General Counsel responded to that Demand Letter whereby a call was scheduled on June 28, 2022, between counsel for Plaintiffs and General Counsel for Limbach.

27. During that June 28, 2022, phone call, both counsel for Plaintiffs and General Counsel for Limbach agreed it would be best for the principals of SMA, SMSC and Limbach to discuss where there was a "disconnect" between the parties and nonpayment.

28. On July 22, 2022, a phone call was held between: (1) the principals of SMA and SMSC, (2) counsel for SMA and SMSC, (3) Andrew "Andy" Wiegand ("Andy") for Limbach and (4) General Counsel for Limbach.

29. David Moore ("Moore"), one of the four principals at SMA and SMSC, was the main contact person on behalf of Plaintiffs for the Witherspoon Agreement. Moore and Andy were the individuals who primarily dealt with one another.

30. During the phone call on July 22, 2022, the Fake Invoices were addressed whereby General Counsel for Limbach advised that the Limbach employee who sent those Fake Invoices was no longer employed by Limbach. Following that statement, it was represented that Andy agreed to pay for the Outstanding Balance owed to Plaintiffs. All parties agreed to schedule a follow-up call to that July 22nd phone call to ensure that Limbach was moving forward with their payment obligations to Plaintiffs.

5

31. Since that time, Limbach has gone "cold" and has not met their payment obligations to SMA or SMSC in connection with the Witherspoon Agreement.

32. As a courtesy to Limbach to ensure payment of materials for the Witherspoon Agreement, Plaintiffs deducted Thirty-Eight Thousand One Hundred and One Dollars and Eighty-Six Cents ($38,101.86) worth of labor ("Labor Costs") from Limbach's Open Balance of $190,885.18.

33. Therefore, Plaintiffs were then owed One Hundred Fifty-Two Thousand Seven Hundred Eighty-Three Dollars and Thirty-Two Cents ($152,783.32) from Limbach.

34. As further courtesy to Limbach, Plaintiffs were requesting that payment of Twenty-Six Thousand One Hundred Fifteen Dollars and Thirty-Two Cents ($26,115.32) were due to them for the Witherspoon Agreement. That amount was derived from the following calculation:

> Outstanding Balance ($190,885.18) *minus*
> Labor Costs ($38,101.86) *minus*
> Back Charge ($126,668.00), which was <u>not</u> agreed to by the Plaintiffs =
> _____
> Total: $26,115.32.

35. In Plaintiffs' effort to resolve the Witherspoon Agreement nonpayment deficiency, they were effectively giving Limbach over an Eighty-Five Percent (85%) discount of the Outstanding Balance that was owed to Plaintiffs.

36. Nevertheless, Limbach has been avoiding making any sort of payment to Plaintiffs.

37. Plaintiffs tried to resolve this matter without the Court's assistance again on February 6, 2024, by sending another letter to Limbach about the issue of nonpayment (Exhibit "D").

38. To date, Plaintiffs have not received any response to that February 6, 2024, letter.

39. To date, Plaintiffs have not received payment from Limbach for the Witherspoon Agreement.

40. As a result, Plaintiffs are demanding payment from Limbach of the Open Balance for the Witherspoon Agreement, totaling to One Hundred Ninety Thousand Eight Hundred Eighty Five Dollars and Eighteen Cents ($190,885.18).

## COUNT I
## Breach of Implied Contract

41. Plaintiffs incorporate Paragraphs 1 through 40 above of the Complaint as if fully set forth herein.

42. Plaintiffs and Limbach have successfully worked together on several projects in the past. The projects between Plaintiffs and Limbach typically began by: (a) Plaintiffs sending Limbach a proposal; (b) Limbach sending a Purchase Order for equipment and controls based off of Plaintiffs' proposal; (c) Plaintiffs providing equipment and services to Limbach and then invoicing Limbach for those equipment and services; and (d) finally, Limbach pays Plaintiffs for that equipment and their services.

43. As a result, Limbach approached Plaintiffs with another opportunity to work together on a project following their precedented success.

44. On or around March of 2020, Plaintiffs and Limbach agreed to work together for the Witherspoon Agreement.

45. As previously done in the past, Plaintiffs sent Limbach their proposals for the project and Limbach sent Plaintiffs Purchase Orders for equipment and services.

46. Plaintiffs provided various equipment and services to Limbach associated with the Witherspoon Agreement. Specifically, SMA and SMSC provided equipment and services amounting to the Open Balance of One Hundred Ninety Thousand Eight Hundred Eight Five Dollars and Eighteen Cents ($190,885.18).

47. Plaintiffs sent Limbach Invoices for the foregoing work that was completed.

48. However, Limbach failed to make the foregoing agreed upon payments to Plaintiffs.

**WHEREFORE**, Plaintiffs Sass, Moore & Associates, Inc. and Sass-Moore Service Corporation demand an entry of judgment against Defendant Limbach Company LLC for (1) the Outstanding Balance owed to Plaintiffs; (2) breach of implied contract; (3) damages for such breach; (4) pre-judgment interest at the statutory rate; (5) attorney's fees and costs, and for such further relief as the Court deems just and proper.

## COUNT II
**Breach of Covenant of Good Faith and Fair Dealing**

49. Plaintiffs incorporate Paragraphs 1 through 48 above of the Complaint as if fully set forth herein.

50. Plaintiffs sent Limbach Invoices for the work that they completed in connection with the Witherspoon Agreement.

51. However, Limbach failed to make the agreed upon payments to Plaintiff.

52. Limbach claimed that one of the Fan Coil Unit(s) sold to them consisted of a third-party manufacturing defect, resulting in Limbach's assertion that they are entitled to breach the Witherspoon Agreement and refusing to pay SMA for the Unit.

53. Limbach then sent SMA a "back charge" in the amount of One Hundred Twenty-Six Thousand Six Hundred and Sixty-Eight Dollars ($126,668.00) to acknowledge that Limbach made an alleged claim concerning the third-party manufacturing defect.

54. Any alleged defect was not the fault of SMA or SMSC, and Plaintiffs communicated to Limbach that it was not conceding that back charge.

55. Limbach used the excuse surrounding the Unit to withhold remitting payments to SMA and SMSC in connection with the other fourteen (14) projects for the Witherspoon Agreement.

56. On or around March 11, 2021, a representative for Limbach contacted SMA and SMSC with an "account update" sending SMA and SMSC Fake Invoices.

8

57. Those Fake Invoices reflected a "back charge" in the amount of One Hundred Twenty-Six Thousand Six Hundred and Sixty-Eight Dollars ($126,668.00).

58. The Fake Invoices were not generated or sent by SMA. There were a series of errors on the Fake Invoices including, that the Fake Invoice numbers did not coordinate with any of SMA's or SMSC's Invoice numbers.

**WHEREFORE**, Plaintiffs Sass, Moore & Associates, Inc., and Sass-Moore Service Corporation demand an entry of judgment against Defendant Limbach Company LLC for (1) breach of covenant of good faith and fair dealing; (2) damages for such breach; (3) pre-judgment interest at the statutory rate; (4) attorney's fees and costs, and for such further relief as the Court deems just and proper.

## COUNT III
## Unjust enrichment

59. Plaintiffs incorporate Paragraphs 1 through 58 above of the Complaint as if fully set forth herein.

60. Plaintiffs provided various equipment and services to Limbach associated with the Witherspoon Agreement. Specifically, SMA and SMSC provided equipment and services amounting to the Outstanding Balance of One Hundred Ninety Thousand Eight Hundred Eight Five Dollars and Eighteen Cents ($190,885.18).

61. Plaintiffs sent Limbach Invoices for the work that was completed for the Witherspoon Agreement.

62. However, Limbach failed to make the foregoing agreed upon payments to Plaintiffs.

**WHEREFORE**, Plaintiffs Sass, Moore & Associates, Inc., and Sass-Moore Service Corporation demand an entry of judgment against Defendant Limbach Company LLC for (1) the Outstanding Balance owed to Plaintiffs; (2) compensatory damages; (3) pre-judgment interest at the

statutory rate; (4) attorney's fees and costs, and for such further other relief as the Court deems just and proper.

## COUNT IV
### Account Stated

63. Plaintiffs incorporate Paragraphs 1 through 62 above of the Complaint as if fully set forth herein.

64. On July 22, 2022, a phone call was held between the principals of SMA and SMSC, counsel for SMA and SMSC, Andy and General Counsel for Limbach.

65. Moore, one of the four principals at SMA and SMSC, was the main contact person on behalf of Plaintiffs for the Witherspoon Agreement. Moore and Andy were the individuals who primarily dealt with one another.

66. During the phone call on July 22, 2022, the Fake Invoices were addressed whereby General Counsel for Limbach advised that the Limbach employee who sent those Fake Invoices was no longer employed by Limbach. Following that statement, it was represented that Andy agreed to pay for the Outstanding Balance owed to Plaintiffs.

67. All parties agreed to schedule a follow-up call to that July 22nd phone call to ensure that Limbach was moving forward with their payment obligations to Plaintiffs.

68. However, following the July 22nd phone call, it was agreed that Moore and Andy would work together in resolving the issue of nonpayment for the completed jobs to forgo payment of professional fees.

69. Since that time, Limbach and Andy have gone "cold" and have not met their payment obligations to SMA or SMSC in connection with the Witherspoon Agreement.

70. Plaintiffs now seek the entire Outstanding Balance that is owed to them in connection to the Witherspoon Agreement.

**WHEREFORE**, Plaintiffs Sass, Moore & Associates, Inc., and Sass-Moore Service Corporation demand an entry of judgment against Defendant Limbach Company LLC for (1) the Outstanding Balance owed to Plaintiffs; (2) compensatory damages; (3) pre-judgment interest at the statutory rate; (4) attorney's fees and costs, and for such other further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury for all issues and facts and damages stated herein.

Dated: May 13, 2024

Respectfully submitted,

John M. Hanamirian, Esquire
N.J.I.D. No.: 002861992
HANAMIRIAN LAW FIRM, P.C.
40 E. Main Street
Moorestown, New Jersey 08057
(856) 793-9092 – o
(856) 793-9192 – f
jmh@hanamirian.com
*Attorney for Plaintiffs,*
*Sass, Moore & Associates, Inc. and Sass-Moore*
*Service Corporation*

## DESIGNATION UNDER LOCAL RULE OF CIVIL PROCEDURE 101.1(B)

In accordance with Local Rule of Civil Procedure 101.1(b), I, the undersigned, am admitted to practice law in the State of New Jersey and to receive service of all notices or papers in this action at the following address:

HANAMIRIAN LAW FIRM, P.C.<br>
40 E. Main Street<br>
Moorestown, New Jersey 08057<br>
(856) 793-9092 – o<br>
(856) 793-9192 – f<br>
jmh@hanamirian.com

Dated: 5/13/24

John M. Hanamirian, Esq.

## LOCAL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I certify that the matter in controversy alleged in the foregoing Complaint is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: 5/13/24

John M. Hanamirian, Esq.